```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,    )   CRIM. NO. 06-00004 SOM
                             )
               Plaintiff,    )   ORDER DENYING DEFENDANT'S
                             )   MOTION FOR JUDGMENT OF
          vs.                )   ACQUITTAL
                             )
FLORENTINO BITAO,            )
                             )
               Defendant.    )
                             )
_____ )
```

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

I.   INTRODUCTION.

On November 14, 2006, a jury found Defendant Florentino Bitao guilty of Count 1 alleged in the January 5, 2006, Indictment. That count charged Bitao with violating 18 U.S.C. § 514(a)(2). The Government dismissed the other count alleged in the Indictment on November 9, 2006.

At the close of the evidence, but before the jury verdict, Bitao moved for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. See Transcript of Jury Trial (Nov. 9, 2006) at 3-96. This court reserved ruling on the Rule 29 motion pursuant to Rule 29(b) and later requested written briefs on the matter.[1]  Id. at 3-109; Transcript of Jury

---

[1] The Advisory Committee Notes to Rule 29 discuss this approach with approval. The Notes recognize that reserving a ruling on a Rule 29 motion until after a verdict is both efficient and fair. If a guilty verdict is returned and the court then grants the Rule 29 motion, the government's right of appeal is preserved while the defendant's double jeopardy concerns are also addressed. If any Rule 29 judgment of

Trial (Nov. 14, 2006) at 4-82 through 4-86. Having received and considered the written briefs addressing Bitao's argument that there was insufficient evidence to support his conviction, the court now denies the Rule 29 motion without a hearing, finding that the conviction is supported by evidence.

II.   PROCEDURAL BACKGROUND.

Count 1 of the Indictment charged that, on or about November 5, 2002, in the District of Hawaii, Bitao, with intent to defraud, possessed with intent to pass, utter, present, offer, or sell "false and fictitious instruments purporting or contriving through scheme or artifice to be an actual security or other financial instrument issued under the authority of the United States." These documents were identified as:

> 1. Two hundred fifty-one (251) fictitious $500,000,000 "Federal Reserve Note" (FRN), bearing serial numbers G71174956A through G71175206A;
>
> 2. Four (4) fictitious "Federal Reserve System Green Card," bearing serial number G71174956A;
>
> 3. One (1) fictitious "Federal Reserve Bank Inventory List," bearing serial number G71174956A;
>
> 4. One (1) fictitious "Federal Reserve Bank Federal Reserve System Guarantee Certificate," bearing serial number G71174956A;

---

acquittal entered after a guilty verdict is ultimately reversed, the guilty finding may be simply reinstated.

      5. One (1) fictitious "Federal Reserve Bank Gold Bullion Certificate," bearing serial number G71174956A;

      6. One (1) fictitious "Federal Reserve Bank Treasury Certificate," bearing serial number G71174956A;

      7. One (1) fictitious "Federal Reserve Bank Insurance Certificate," bearing serial number G71174956A;

      8. One (1) fictitious "Federal Reserve Bank International Immunity Certificate (Global Immunity)," bearing serial number G71174956A;

      9. One (1) fictitious "Federal Reserve Bank Bank Certificate," bearing serial number G71l74956A.

Indictment (Jan 5, 2006).

      The court instructed the jury as follows:

      The indictment charges the defendant with possessing with intent to defraud and to pass, utter, present, offer, or sell, false and fictitious instruments purporting or contriving through scheme or artifice to be actual securities or other financial instruments issued under the authority of the United States, in violation of 18 U.S.C. § 514(a)(2).  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

      First, the defendant possessed the false and fictitious instruments described in the indictment;

      Second, the defendant intended to pass, utter, present, offer, or sell the false and fictitious instruments within the United States, with the intent to defraud; and

      Third, the false and fictitious instruments purported through scheme or

>           artifice to be actual securities or other
>           financial instruments issued under the
>           authority of the United States.
>
>           A number of false and fictitious
>           instruments are named and described in the
>           indictment.  To find the defendant guilty,
>           you need not find that all of the instruments
>           were false and fictitious, but you must all
>           agree that a particular instrument was false
>           and fictitious beyond a reasonable doubt.

See Jury Instructions (Nov. 14, 2006).

III.    RULE 29 STANDARD.

Rule 29(a) requires this court to grant a motion for judgment of acquittal when "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  In ruling on a motion for judgment of acquittal under Rule 29(a), this court views the evidence in the light most favorable to the government, deciding whether a rational jury could find the defendant guilty beyond a reasonable doubt.  United States v. Johnson, 297 F.3d 845, 868 (9th Cir. 2002) (a Rule 29 motion will be granted "only if viewing the evidence in the light most favorable to the government, and granting to the government all reasonable inferences that may be drawn from the evidence, no rational trier of fact could find beyond a reasonable doubt that the defendant committed the crime"); United States v. Disla, 805 F.2d 1340, 1348 (9th Cir. 1986) ("A conviction is supported by the evidence if, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences, there was

relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt."); United States v. Hazeem, 679 F.2d 770, 772 (9th Cir. 1982) (in deciding a Rule 29 motion, the "trial court must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt").

IV.     ANALYSIS.

Bitao argues that there was no evidence demonstrating that he intended to pass, utter, present, offer, or sell the false and fictitious instruments within the United States, or that he did so with the intent to defraud.  Bitao's argument, however, ignores evidence from which such intent can be inferred.

Bitao's Rule 29 challenge is premised on his assertion that there is no direct evidence of his intent.  Bitao says that the evidence indicates only that he intended to bring the notes into the country for authentication.  See, e.g., Testimony of Paul Akeo (Nov. 8, 2006) at 2-74 ("Mr. Bitao stated that it was not his intention to sell them here locally but was instead to bring it to the federal building for authentication.") and 2-95 ("Q[.] And Mr. Bitao told you that he was planning on taking these documents to the federal building to authenticate them; in other words, to find out if they were real.  Is that correct?  A[.] Yes, ma'am."); Testimony of F.J. Carney (Nov. 8, 2006) at 2-

154 ("During the November 5th interview he indicated that he wanted to bring them here to get authenticated."). The jury, however, was not required to believe what Bitao told the agents. See United States v. Scheffer, 523 U.S. 303, 313 (1998) ("A fundamental premise of our criminal trial system is that the jury is the lie detector. Determining the weight and credibility of witness testimony, therefore, has long been held to be the part of every case that belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." (quotations, alterations, and citations omitted)); United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) ("The jury was free to disbelieve Mr. Barajas and infer the opposite of his testimony to support its verdict.").

Bitao's argument is tantamount to saying that evidence does not support a finding of his intent unless the Government has an admission from him. However, direct evidence such as an admission is not necessary for a jury to determine a defendant's intent. Instead, juries may rely on both direct and circumstantial evidence. In United States v. Ramirez-Rodriquez, 552 F.2d 883, 884 (9th Cir. 1977), for example, the defendant argued on appeal that the evidence was insufficient to establish his intent. In evaluating that argument, the Ninth Circuit noted that "[c]ircumstantial and testimonial evidence are

6

indistinguishable insofar as the jury fact-finding function is concerned, and circumstantial evidence can be used to prove any fact." Id.; see also Cordova Barajas, 360 F.3d at 1041 (juries may infer intent from the direct and circumstantial evidence presented at trial); United States v. Valdovinos, 558 F.2d 531, 535 (9th Cir. 1977) (intent to distribute heroin may be inferred from a defendant's possession of 4.31 grams of 12% purity heroin and from circumstantial evidence, such as the defendant's nonuse of heroin and the possibility that the heroin could have been cut to create a greater volume).

In the present case, reasonable and rational jurors could have inferred Bitao's intent from the combination of his possession of the notes and other direct and circumstantial evidence. Reasonable and rational jurors reviewing the totality of the evidence had a basis for concluding that Bitao indeed possessed the Federal Reserve Notes ("FRNs") with intent to defraud and to pass, utter, present, offer, or sell, false and fictitious instruments purporting or contriving through scheme or artifice to be actual securities or other financial instruments issued under the authority of the United States, in violation of 18 U.S.C. § 514(a)(2).

There is no dispute that Bitao had the fake FRNs in his checked-in suitcase as he attempted to enter the United States. See Akeo Test. at 2-36, 2-62 (indicating that 250 FRNs were

located in Bitao's checked-in luggage) and at 2-66 ("I was informed that during a secondary exam of a suitcase belonging to Mr. Bitao, they uncovered some documentation that they had questions about.") and at 2-73 (indicating that Bitao admitted that he knew about the FRNs because he personally packed the documents); Testimony of Lorelei Pagano (Nov. 9, 2006) at 3-82 through 3-85 (testifying as a Secret Service agent that the FRNs brought into the United States by Bitao were fictitious). From this testimony, reasonable and rational jurors could conclude that Bitao knowingly possessed the FRNs and knew they were worthless, as it is unlikely that people would put billions of real dollars in a checked suitcase.

Other evidence indicates that Bitao knew the FRNs were not authentic. For example, Bitao had been told that the FRNs were not authentic. See Ex. 16-d; Testimony of Christian Roylo (Nov. 8, 2006) at 2-109 (stating that Roylo, a computer forensics expert, found an email on Bitao's floppy disks telling Bitao that the FRNs were fake); Testimony of Craig Hatcher (Nov. 8, 2006) at 2-124 (indicating that Hatcher had told Bitao that the FRNs were fake). In fact, Craig Hatcher had advised Bitao not to attempt to use the notes to fund any kind of investment, unless he would like a lengthy stay in prison. Hatcher Test. at 2-123. Bitao had paid only $10,000 for FRNs with a combined face value of billions of dollars, which made it likely he knew that the FRNs

were fake.  <u>See</u> Testimony of Brad Nago (Nov. 8. 2006) at 2-175; Ex. 3 (copies of the Notes).

Brad Nago testified that Bitao had agreed to fund a $450 million project.  Testimony of Brad Nago (Nov. 8. 2006) at 2-161 through 2-163.  Nago said Bitao told him that Bitao had been successful using FRNs.  <u>Id.</u> at 2-166 through 2-167.  From this testimony, reasonable and rational jurors could conclude that Bitao actually intended to use the fake FRNs to fund the $450 million project.

Bitao did not declare the FRNs, <u>see</u> Exhibit 1; Akeo Test. at 2-70, and used a fake name, "Otabi," when communicating with Craig Hatcher about the FRNs.  <u>See</u> Testimony of Craig Hatcher (Nov. 8., 2006) at 2-114 through 2-115, 2-131.  From this testimony, reasonable and rational jurors could infer that Bitao had a fraudulent intent with respect to the FRNs.

Bitao also argues that the Government failed to "positively identify" the FRNs in his possession as the notes discussed with Hatcher and Nago.  A reasonable and rational jury, however, could infer that the notes were indeed the same based on the evidence presented.

V.      CONCLUSION.

Because the evidence is sufficient to support Bitao's conviction, his Rule 29 motion is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 12, 2007.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States v. Bitao, Crim. No. 06-00004 SOM; ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL.